1  **CARLSON LYNCH, LLP**
TODD D. CARPENTER (#234464)
2  tcarpenter@carlsonlynch.com
SCOTT G. BRADEN (#305051)
3  sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
4  San Diego, CA 92101
Tel:   619-762-1910
5  Fax:   619-756-6991

6  *Attorneys for Plaintiff*
*and the Putative Classes*

7

8  ## UNITED STATES DISTRICT COURT

9  ## SOUTHERN DISTRICT OF CALIFORNIA

10  RANDALL SULZER, individually, and on behalf of all others similarly situated,

Case No.: **'20 CV 1536 BAS BLM**

11            Plaintiff,

**CLASS ACTION COMPLAINT**

12        v.

**JURY TRIAL DEMANDED**

13  WALMART, INC., and DOES 1-10, inclusive,

14

15            Defendants.

16        Plaintiff Randall Sulzer ("Plaintiff"), on behalf of himself and all others similarly
17  situated, brings this class action against Defendant Walmart, Inc. ("Defendant"), based
18  on Defendant's false and deceptive advertising and labeling of their Great Value brand
19  ground coffee products. Plaintiff makes the following allegations based on the
20  investigation of his counsel and on information and belief, except as to allegations
21  pertaining to Plaintiff individually, which are based on his personal knowledge.

22                    **NATURE OF ACTION**

23        1.    This case revolves around a straightforward and systemic course of false,
24  misleading, and unlawful conduct: Defendant has grossly exaggerated the number of
25  cups of coffee that certain varieties of Great Value ground coffee products (the
26  "Products")[1] can make in order to induce consumer purchases and to charge consumers
27  more for these Products.

28
---
[1] "Products" are further defined and listed in Paragraphs 15 ,16 and 31.

1

2.     Throughout the statute of limitations period, Defendant has sold the Products to consumers based on the representation that they contain enough ground coffee to make up to a specific number of servings (e.g., "**240** 6 FL OZ CUPS"). However, by following Defendant's own definitions and instructions, the Products do not contain nearly enough ground coffee to make the number of servings represented.

3.     Indeed, it is a classic and unlawful bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing.

4.     Plaintiff and other consumers purchased the Products because they reasonably believed – based on Defendant's representations – that these Products contained enough coffee to make the specified number of servings. Had Plaintiff and other consumers known the truth (i.e., that the Products do not contain enough coffee to make the specified number of servings), they would have paid less for them, or would not have purchased them at all. As a result, Plaintiff and other consumers have been deceived and have suffered economic injury.

5.     Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled Products during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Classes, including Plaintiff.

7.    The Court has personal jurisdiction over Defendant because it conducts substantial business in California.  Defendant has and continues to actively market, promote, and sell the Products in the State of California through its retail stores and online channels, and Defendant has sufficient minimum contacts within this State and/or has sufficiently availed itself of the market in this State through its marketing, promotion, and sales within this State to render the exercise of jurisdiction by this Court permissible.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while Plaintiff resided in this judicial district.

## THE PARTIES

9.    Plaintiff Randall Sulzer resides in San Diego County, California.  In or about July 2020, Plaintiff purchased for his own personal benefit a canister of Great Value brand Classic Roast Medium ground coffee, claiming that it "Makes Up To 240 Cups", for approximately $4.93 from a Walmart store located in La Mesa, California. In purchasing the Product, Plaintiff saw and relied on Defendant's representations made on the packaging.  Specifically, Plaintiff reasonably believed that the Product contained enough ground coffee to make 240 cups or servings of coffee because he saw the representation "MAKES UP TO **240** CUPS" prominently printed on the front of the canister.  In reliance on this representation, Plaintiff purchased the canister of Great Value Classic Roast Medium.

10.    Plaintiff's reasonable belief that the Product he purchased could make the represented number of servings was an important factor in his decision to purchase the Product. Plaintiff would not have purchased the Product, or would not have paid as much as he did, had he known that the Product did not contain enough ground coffee to make the represented number of cups of coffee. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.  Plaintiff was also damaged in his purchase because Defendant's

CLASS ACTION COMPLAINT

false advertisement artificially inflated the price of the Product as a result of increased consumer demand generated by the false advertisement, which naturally led to an increase in the price charged.

11.     Plaintiff is susceptible to this reoccurring harm because he cannot be certain that Defendant has corrected this deceptive and false advertising scheme, and he desires to continue to purchase Defendant's Products when convenient.  However, despite being misled by Defendant with respect to the Product he purchased, Plaintiff lacks personal knowledge as to Defendant's specific business practices relating to the Products. Consequently, there is still doubt in his mind as to the possibility that some of the Products could contain enough coffee to make the advertised number of servings.  In short, Plaintiff cannot trust that Defendant will label and/or advertise its Products truthfully and in a non-misleading fashion in compliance with California law. Plaintiff simply does not have the resources to ensure that Defendant is complying with California and federal law with respect to its labeling and advertising of the Products.

12.     Additionally, because of the breadth of Products involved in Defendant's deceit, and the likelihood that Defendant may yet develop and market additional products that misrepresent the serving yield, Plaintiff may again purchase a falsely-advertised product from Defendant under the mistaken impression that the represented number of servings is accurate.  Indeed, Plaintiff regularly shops at stores where the Products are sold, and he would like to continue purchasing the Products in the future when convenient. Therefore, Plaintiff may purchase the Products in the future. Moreover, Class members will continue to purchase the Products, reasonably but incorrectly believing that they contain enough coffee to make the advertised number of servings.

13.     Defendant Walmart, Inc., is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 702 S.W. 8th Street, Bentonville, AR 72716.  Walmart was founded by Sam Walton in 1962 and incorporated in 1969.  Sam Walton passed away in 1992, but the Walton family maintains ownership

4

of the company.  Beginning as a single store with a strategy of selling products at low prices to generate high-volume sales, Walmart has grown to become the world's largest company by revenue ($514.4 billion in 2019) and number of employees (2.2 million). Walmart also earned over $129 billion in gross profit in 2019.  Part of Walmart's successful business model involves selling products at low prices under its own house brand, Great Value (launched in 1993).  Walmart does not manufacture Great Value products and instead maintains arrangements with other agricultural and food corporations to purchase their products and sell them with Great Value packaging.  In one such arrangement, Sara Lee Corporation has manufactured Great Value coffee products for Walmart.

14.	Plaintiff does not know the true names or capacities of the persons or entities sued herein as Does 1-10, inclusive, and therefore sues such defendants by such fictitious names.  Plaintiff is informed and believes, and upon such information and belief alleges, that each of the Doe defendants is, in some manner, legally responsible for the damages suffered by Plaintiff and the Class Members as alleged herein.  Plaintiff will amend his Complaint to set forth the true names and capacities of these defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

## FACTUAL ALLEGATIONS

### A.	The Products At Issue

15.	The products at issue in this case consist of all varieties (e.g., different types of roasts and strengths) and sizes (e.g., 11.3 oz., 30.5 oz., 48 oz., etc.) of Great Value ground coffee canisters and tins which make a specific servings representation on the front label (e.g., "MAKES UP TO 240 CUPS").

16.	These Products include, but are not limited to, the following varieties of Great Value ground coffee canisters and tins: Classic Roast, Classic Decaf, Colombian, French Roast, and Donut Shop.

17.    The Products are sold at Walmart store locations throughout California and online at Walmart.com and other online channels, such as amazon.com.

**B.    Defendant Grossly Overstates The Number Of Servings The Products Can Make**

18.    Defendant represents on the packaging of each of the Products that they contain enough ground coffee to make up to a specified number of servings. For example, Defendant prominently states on the front packaging of the Great Value Classic Roast, 30.5 oz product: "MAKES UP TO 240 OZ CUPS."

19.    Representative images of the front packaging of some of the Products are depicted below:



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    20.    Defendant places a materially identical representation on the front label of

22 all the Products, although the number of represented servings of course varies based on

23 the size of the Product.

24    21.    On "Brewing Instructions" on the side label of all the Products, Defendant

25 instructs consumers to use 1 "heaping" tablespoon of ground coffee to make 1 six-ounce

26 serving,[2] as shown below:

27

28 _____
[2] Hereinafter, the term "cup" is synonymous, and used interchangeably with, the term "serving."

7

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



20      22.    One tablespoon of Great Value ground coffee weighs approximately

21   5 grams.

22      23.    Based on these standard measurements, it is evident that Defendant grossly

23   overstates the number of servings the Products can make.

24      24.    By way of example, as depicted above, Defendant represents on the 30.5 oz

25   canister of Great Value Classic Roast that it "MAKES UP TO 240 CUPS."

26      25.    As set forth above, 1 tablespoon of ground coffee is needed to make

27   1 serving/cup. Therefore, 240 tablespoons of ground coffee are needed to make

28   240 servings/cups.

26.     As set forth above, one tablespoon of Great Value's ground coffee weighs approximately 5 grams. Therefore, 1,200 grams of ground coffee are needed to make the promised 240 servings [240 tablespoons x 5 grams].

27.     However, the 30.5 oz canister has a net weight of 865 grams. Therefore, it contains only 72% of the amount of ground coffee required to make up to 240 cups of coffee [(865 / 1,200) x 100%]. This is equivalent to approximately 173 cups of coffee.

28.     The same shortfall (i.e., only 173 cups of coffee) is calculated by dividing the total grams of coffee in the 30.5 oz. canister by the number of grams required to make a single serving [865 grams / 5 grams].

29.     In sum, the 30.5 oz. tin only contains enough coffee to make 173 cups, which is equivalent to 72% of the amount of ground coffee that is required to make the 240 cups of coffee:

- 865 grams / 1,200 grams = 72%
- 173 cups / 240 cups = 72%

30.     Thus, it is impossible for the Great Value Classic Roast Product to contain enough ground coffee to make anywhere close to 240 cups of coffee. Defendant's representation that the 30.5 oz. canister "MAKES UP TO 240 CUPS" is therefore false, deceptive, and misleading.

31.     The same calculations apply equally to all of the other Products. According to their net weight, as well as the weight per tablespoon of ground coffee, they are unable to make anywhere close to the represented number of cups. These approximate calculations are set forth in the following chart:

| Product Name | Net Weight (oz) | Net Weight (g) | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|---|
| Classic Roast | 11.3 | 320 | 90 | 64 | 71% |
| Classic Roast | 30.5 | 865 | 240 | 173 | 72% |
| Classic Roast | 48 | 1360 | 380 | 272 | 71.5% |
| Classic Decaf | 11.3 | 320 | 90 | 64 | 71% |
| Classic Decaf | 30.5 | 865 | 240 | 173 | 72% |

9

| Product Name | Net Weight (oz) | Net Weight (g) | Number of "Up To" Servings Promised | Approximate Number of Servings Received | Approximate Percentage of Servings Received |
|---|---|---|---|---|---|
| Colombian | 11.3 | 320 | 90 | 64 | 71% |
| Colombian | 24.2 | 686 | 200 | 137 | 68.5% |
| French Roast | 24.2 | 686 | 200 | 137 | 68.5% |
| Donut Shop | 30.5 | 865 | 240 | 173 | 72% |

32.     There are 9 varieties of the Products listed in the chart above. Each and every one of them contains substantially less ground coffee than is required to make the recommended number of "up to" servings promised on the packaging. On average, these Products contain enough ground coffee to make only 70.8% of the number of servings promised on the packaging, thus revealing a systematic course of unlawful conduct by Defendant to deceive and shortchange consumers.

C.     **The False And Deceptive Serving Amount Representation Harms Consumers**

33.     Plaintiff and other consumers purchased the Products relying on Defendant's serving amount representations on the Products' packaging.

34.     Plaintiff and other consumers reasonably expect that, if they follow the serving instructions, the Products will produce the number of servings/cups of coffee as represented on the Products' packaging.

35.     Plaintiff's and consumers' reasonable belief that the Products are able to make up to the represented number of cups of coffee was a significant factor in each of their decisions to purchase the Products.

36.     Plaintiff's and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of cups of coffee they are able to make. At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of cups of coffee they make over a period of time.

37.     As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendant knew or should have known

that each of the Products falsely and deceptively overstates the number of servings of coffee that can be made.

38.     Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's serving size representations. Nonetheless, Defendant deceptively advertises the Products in order to deceive consumers into believing they are getting considerably more coffee than they actually are.

39.     Consumers are willing to pay more for the Products based on the belief that the Products contain enough ground coffee to make up to the represented number of servings. Plaintiff and other consumers would have paid significantly less for the Products, or would not have purchased them at all, had they known that they were getting fewer servings of coffee than what they were promised.

40.     By analogy, if a consumer purchased a six-pack of soda, but only received four cans of soda, the consumer would only be receiving 66.67% of what she paid for. The situation here is no different in terms of the harm to the consumer. The only difference is that, due to the nature of the Products, Defendant is able to conceal the gross shortfall of coffee because reasonable consumers do not keep track of the number of cups of coffee they make over a period of time.

41.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## **CLASS ACTION ALLEGATIONS**

42.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

> All consumers within the State of California who purchased any Great Value coffee canisters or tins advertising a number of coffee cups that the product would purportedly produce during the applicable statute of limitations and who have not received a refund or credit for their purchase(s).

43.     Excluded from the Class are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

44.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

45.     Plaintiff is a member of the proposed Class.

46.     Numerosity: The proposed Class is so numerous that joinder of all members would be impractical. The Products are sold at Walmart stores throughout California and are available online by Defendant and third-party retailers. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

47.     Common Questions Predominate: There are questions of law and fact common to the proposed Class that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a.     Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b.     Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.     Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

CLASS ACTION COMPLAINT

d.    Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e.    Whether Plaintiff and the Class are entitled to damages and/or restitution, and in what amount;

f.    Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g.    Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

48.    Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ground coffee to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

49.    Typicality: The representative Plaintiff's claims are typical of those of the proposed Class, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

50.    Adequacy: Plaintiff will fairly and adequately protect the interests of the proposed Class as his interests do not conflict with the interests of the members of the proposed Class he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Class will be fairly and adequately protected by the Plaintiff and his counsel.

51.     Superiority: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.  Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Class, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class.

## **FIRST CAUSE OF ACTION**

**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**

52.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

53.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

54.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c), and the purchases of such Products by Plaintiff and members of the Class constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

55.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …"  By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products have characteristics (i.e., contain enough ground coffee to make up to a specified number of

servings) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

56.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., contain enough ground coffee to make up to a certain number of servings) which they do not possess. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

57.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ground coffee to make a specified number of servings, but not intending to sell the Products as such, Defendant has violated section 1770(a)(9) of the CLRA.

58.    At all relevant times, Defendant has known or reasonably should have known that the Products did not contain enough ground coffee to make the represented number of servings, and that Plaintiff and other members of the Class would reasonably and justifiably rely on the packaging in purchasing the Products.

59.    Plaintiff and members of the Class have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of the Class.

60.    Plaintiff and members of the Class have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain substantially less ground coffee to make the promised number of servings.

61.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue concurrently with this Complaint.

62.     On August 7, 2020, Plaintiff, by and through his counsel, sent a notice letter by certified mail to Defendant of his intent to pursue claims under the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. If Defendant does not respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to § 1782, Plaintiff will amend his complaint to seek actual, punitive, and statutory damages, as appropriate against Defendant.

63.     Plaintiff also requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the Class. Plaintiff also requests an award of attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to California Civil Code § 1780(a).

## SECOND CAUSE OF ACTION

### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, *et seq*

64.     Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*.

66.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  Cal. Bus. & Prof. Code § 17500.

67.    Defendant has represented and continues to represent to the public, including Plaintiff and members of the Class, through its deceptive packaging, that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care, that the representations were and continue to be misleading, Defendant has violated the FAL.

68.    As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of the Class.

69.    Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to him and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## THIRD CAUSE OF ACTION

### Violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*

70.    Plaintiff repeats the allegations contained in paragraphs 1-51 above as if fully set forth herein.

71.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*

72.    The UCL provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ." Cal. Bus. & Prof. Code § 17200.

73.    Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the

Products was and continues to be "unlawful" because it violates the CLRA and FAL. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff and members of the Class.

74.     Under the UCL, a business act or practice is "unfair" if the defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to how many cups of coffee the Products can make is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair." As a result of Defendant' unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff and members of the Class.

75.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain enough ground coffee to make substantially more servings than they can actually make. Because Defendant misled Plaintiff and members of the Class, Defendant's conduct was "fraudulent."

76.     Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to him and members of the Class, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully prays for following relief:

A.    Certification of this case as a class action on behalf of the Class defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B.    An award to Plaintiff and the proposed Class of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Class as a result of its unlawful, unfair and fraudulent business practices described herein;

C.    A declaration that Defendant's actions, as described herein, constitute violations of the claims described herein;

D.    An award of injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.    An order directing Defendant to engage in a corrective advertising campaign;

F.    An award to Plaintiff and his counsel of his reasonable expenses and attorneys' fees;

G.    An award to Plaintiff and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

H.    For such further relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and the Classes, hereby demands a jury trial with respect to all issues so triable.

Dated: August 7, 2020                    **CARLSON LYNCH LLP**

By:  */s/Todd D. Carpenter*
_____
Todd D. Carpenter (#234464)
tcarpenter@carlsonlynch.com
Scott G. Braden (#305051)
sbraden@carlsonlynch.com

*Attorneys for Plaintiff*
*and the Putative Classes*

19

CLASS ACTION COMPLAINT

**CARLSON LYNCH, LLP**
TODD D. CARPENTER (#234464)
tcarpenter@carlsonlynch.com
SCOTT G. BRADEN (#305051)
sbraden@carlsonlynch.com
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel:   619-762-1910
Fax:   619-756-6991

*Attorneys for Plaintiff*
*and the Putative Classes*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDALL SULZER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALMART, INC., and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**DECLARATION IN SUPPORT OF JURISDICTION** |

I, Todd D. Carpenter, declare under penalty of perjury the following:

1.      I am an attorney duly licensed to practice before all of the courts in the State of California.  I am a partner and part-owner of Carlson Lynch LLP and counsel of record for Plaintiff in the above-entitled action.

2.      Defendant Walmart, Inc. has done and is doing business in the County of San Diego.  Such business includes the marketing, distributing, and retail and online sales of ground coffee.

3.      Plaintiff Randall Sulzer purchased a canister of Defendant's Great Value brand Classic Roast ground coffee, 30.5 oz, from Walmart in La Mesa, California during July 2020.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed August 7, 2020, in San Diego, California.

*/s/ Todd D. Carpenter*
Todd D. Carpenter

DECLARATION IN SUPPORT OF JURISDICTION